## Housum *versus* Rogers *et al.*

*Assignment by a Bank for Benefit of Creditors.—Right of Endorser to pay Note discounted by it, in its own depreciated Paper, after a* bonâ fide *Transfer to Assignees.*

1. The endorser of a negotiable note, discounted by a bank and by it transferred to assignees before maturity, for full value, has no right, when payment is demanded by the holders, to pay the note in the depreciated paper of the bank after it has failed.

2. The Bank of Pennsylvania, through a branch office, discounted a note upon the credit of an accommodation endorser, which before it came due, was with other notes transferred by the bank to certain trustees of other banks, in consideration of a sum of money advanced by them to sustain its credit: before maturity, the bank failed, but the note was renewed in the hands of the trustees by the parties to it; when due, payment was tendered in the notes of the bank by the endorser to the agent of the trustees, which was refused and suit brought against him upon the note. *Held*, that the plaintiffs were holders for value, and could not be required to receive in payment the depreciated notes of the bank.

3. Though the transfer of the note by the bank was not in the usual course of business, it is not for that reason invalid; and where the transaction was honest, for the benefit of the public and the protection of the stockholders, the legal and equitable title in the note would pass to the trustees, who were entitled to demand payment in constitutional currency or its equivalent.

4. Where the note was transferred for value, and, with knowledge of the transfer and the failure of the bank, the endorser joined the drawers in renewing the note in the hands of the assignees, he cannot call in question the power of the bank to transfer the note under the charter, for he was a debtor and not a creditor interested in the assets of the bank, and, as such, entitled to interfere.

ERROR to the Common Pleas of *Berks county*.

This was an action on the case brought to April Term 1858, by Charles H. Rogers, John B. Austin, and Adolph E. Borie, against Daniel Housum.

The case was this:—On the 15th day of June 1857, Norton & Clymer drew a promissory note for the sum of $2630, payable three months after date, to the order of Daniel Housum, at the office of discount and deposit of the Bank of Pennsylvania, at Reading. This note Daniel Housum endorsed, for the accommodation of the drawers, who had the same discounted for their own use at the said office. When this note fell due, Norton & Clymer were unable to pay it, and it was renewed by another note, dated September 17th 1857, for the same sum, drawn and endorsed by the same parties, and payable at the same place, sixty days after the date thereof. Soon after the making of this note, Thomas Allibone, the president of the Bank of Pennsylvania, made arrangements with John Welsh, agent for certain of the Philadelphia banks, by which it was agreed that the said banks should advance the sum of six hundred thousand dollars to

[Housum v. Rogers *et al.*]

the Bank of Pennsylvania, to sustain her credit, in consideration of which, Allibone agreed to pass to the said banks certain bills receivable as collateral security. In pursuance of this arrangement the Philadelphia banks advanced to the Bank of Pennsylvania, $504,000, on the 23d of September 1857, and $163,000 on the 24th of the same month; and Thomas Allibone passed over into the hands of John Welsh the sum of $718,000 in bills receivable, belonging to the Bank of Pennsylvania. Among these was the note on which this suit is founded, it having been sent to Philadelphia, from the branch at Reading, by David McKnight, the cashier, at the request of the president. It was then passed by John Welsh, or by Welsh and Robbins, into the hands of the plaintiffs in this suit, who allege that they hold it as trustees of the banks who advanced the money to the Bank of Pennsylvania. Before it fell due, it was sent to the Farmers' Bank of Reading for collection, and when it matured, was renewed November 18th 1857, by another note of the same makers and endorser, for the same sum, and payable ninety days after date, at the Farmers' Bank of Reading. At the time of the last renewal Daniel Housum, the endorser, was not told, nor did he know, that the note had passed from the Bank of Pennsylvania, nor was he aware of that fact until the time it fell due. The printed notice that he received, showing the time when the last note matured, was to the effect that the note was at the office of discount and deposit.

But he knew as early as the 6th of February 1858, that the note was held by the plaintiffs, and the fact that the branch office at Reading had ceased to do business when the note was known to him on the 18th of November 1857, when the note was renewed by him at the Farmers' Bank of Reading.

The note thus renewed fell due February 19th 1858, and was duly protested for non-payment, of which the defendant had notice. On that day he prepared to pay it partly in cash and partly by his own note, which was agreed to by the agent of the plaintiffs. Subsequently, however, he procured notes of the Pennsylvania Bank, which he tendered in payment of this claim. This action was then brought against him, and on the trial the court below (JONES, P. J.) directed the jury to return their verdict for the plaintiffs, which was done for the amount of the note with interest and costs of protest. Judgment having been entered on the verdict, the defendant sued out this writ and assigned here for error the charge of the court below as above stated.

*J. Hagenman, C. K. Robeson,* and *John Banks,* for plaintiffs in error, argued that the note not having been transferred to the plaintiffs below in the usual course of business, nor for a valuable consideration, as in payment of an antecedent debt, or for cash or property advanced, or for a debt contracted or responsi-

[Housum *v.* Rogers *et al.*]

bility incurred in the usual course of business; it was in their hands a mere pledge, subject to any equity that could be presented against it in the hands of the Bank of Pennsylvania, and was therefore payable in the notes of the bank: Petrie *v.* Clark, 11 S. & R. 388; Bank of Penna. *v.* Spangler, 8 Casey 474.

That the transfer of this note with others was not the act of the bank through its board of directors, but was an unauthorized and illegal transaction of the president, which did not bind the corporation: McCullough *v.* Moss, 5 Denio 567, 575; Life and Fire Ins. Co. *v.* Mech. Fire Ins. Co., 7 Wendell 31; Ridgeway *v.* The Farmers' Bank of Bucks Co., 12 S. & R. 266; Farmers' Bank *v.* McKee, 2 Barr 318.

*John S. Richards* and *Charles Davis*, for defendants in error, admitted that the transfer of negotiable paper as collateral security for a pre-existing debt, would not constitute the transferee a holder for a valuable consideration, but denied that this point could be made in this case. The notes held by the bank, of which this was one, were given to plaintiffs on condition that they would advance a large sum of money to the bank, which was done, and argued that any consideration made the transferee a holder for value: Petrie *v.* Clark, 11 S. & R. 388; Kirkpatrick *v.* Muirhead, 4 Harris 123; Hind *v.* Holdship, 2 Watts 104; Mercer *v.* Lancaster, 5 Barr 162.

Being holders for a valuable consideration, plaintiffs are not bound to receive in payment depreciated notes of the bank: Philips *v.* Bank of Lewistown, 6 Harris 395; Reed *v.* Mitchel, Id. 405.

As to the allegation that the transfer was not the act of the corporation, they replied, that if it was satisfied no one else had a right to object: 1 Watts 387; 12 Wharton 80; Fleckner *v.* U. S. Bank, 8 Wheat.; U. S. Bank *v.* Dandridge, 12 Wheat. 64; Foster *v.* Essex Bank, 19 Mass. 479. Even if the transfer had been made without the knowledge of the directors, the bank could not have made this defence at the time when the defendant below offered to pay in depreciated bank notes. A mortgage illegally given becomes binding if acquiesced in: Gordon *v.* Preston, 1 Watts 387.

Independent of this, defendant has no case. Plaintiffs held the note dated September 17th 1857, which they received from the bank for a valuable consideration. This was given up in exchange for the note on which this suit was brought, and with it went all claims upon the bank relating to it, so that plaintiffs held the note of November 18th 1857, discharged of all prior equities if any such had existed: Kimbo *v.* Lytle, 10 Yerger 428. The drawers and endorsers of the former note have it now in their possession, and they cannot now refuse to pay this note on the allegation that plaintiffs were not the proper owners of

[Housum *v.* Rogers *et al.*]

that which they received in exchange for it: See Chitty on Bills, 10th ed. 173, note; 2 Nott & McCord 242. By endorsing, Housum gave Clymer unlimited control over it: Lord *v.* Ocean Bank, 8 Harris 386; Appleton *v.* Donalson, 3 Barr 386; see also 5 Barr 162; 2 Casey 259; 6 Id. 138. Petrie *v.* Clark has no application on the other side. It sustains the principle, that where there is neither collusion nor fraud such contracts are valid. In The Bank *v.* Spangler, the controversy was between the bank and its debtor, which is not this case. As between a debtor and an assignee of the bank, notes acquired after notice of the assignment were held neither admissible as payment or set-off: Northampton Bank *v.* Balliet, 8 W. & S. 311; Ride *v.* Johnson, 8 Harris 193; Phillips *v.* Bank of Lewistown, 6 Id. 398; Reed *v.* Mitchell, 6 Id. 405; see also Hughes *v.* Large, 2 Barr 103. The legal presumption is in favour of the endorsee of negotiable paper: Gray's Admin. *v.* Bank of Kentucky, 5 Casey 365; see also 4 Casey 294; 4 W. & S. 445; 6 Id. 221.

The opinion of the court was delivered, July 25th 1861, by

WOODWARD, J.—The plaintiff in error, defendant below, was an accommodation endorser of a promissory note discounted by the Bank of Pennsylvania, at its office of discount and deposit at Reading. Had he a right to pay the note in the depreciated paper of the Bank of Pennsylvania to an assignee who had paid full value for it to the bank? The court below said no, and we think they answered correctly.

The analogies furnished by the cases cited in the argument are sufficient to justify the ruling of the court, but a reason which is decisive against the plaintiff in error may be drawn from the nature of the instrument he subscribed. It was a negotiable note. By his endorsement, the plaintiff in error meant to give it credit, into whose hands soever it should lawfully come for value. When he finds it in the hands of the trustees of other banks, who came forward in a vain endeavour to sustain the sinking fortunes of the Bank of Pennsylvania, and paid more money than the notes were worth which the Bank of Pennsylvania transferred to them, how can he refuse to perform his contract? What equity has he to ask such trustees to receive the almost worthless notes of the broken bank in discharge of his liability? He made a transferable instrument. He knew it might be transferred for value, and he was shown on the trial that it had been transferred *bonâ fide* and for full value. Then let him meet it as he meets other pecuniary obligations.

But whilst the transfer for value is not denied, it is insisted that it was out of the usual course of business. Doubtless the arrangement made through Mr. Welsh was unusual and extraor-

4 WR.—13

[Housum *v.* Rogers *et al.*]

dinary, but it was an honest transaction. It seemed to be demanded by the exigencies of the occasion. It was designed to benefit the public, to protect the stockholders of the Bank of Pennsylvania, and to maintain a sound paper currency. Of what moment, then, that the transfer of this note, influenced by such laudable motives, and paid for in solid cash, was not in the usual course of business? It gave the transferees a legal and equitable title to the note, and they have a right to demand its redemption in the constitutional currency, or its equivalent.

It is argued that the Bank of Pennsylvania had no power under her charter to transfer the note. The plaintiff in error is not in position to raise that question. His contract was not enlarged or impaired by the transfer. He gave his note a transferable quality, and seeing that it was transferred with the consent of the holder, and for value before it fell due—and seeing, especially, that he joined the drawers in renewing it after the transfer, and after the failure of the Bank of Pennsylvania was known to him, we do not consider him at liberty to raise the question of charter powers, which is suggested in the argument. As nobody interested in the assets of the bank is here to question the transfer, a *debtor* of the bank is not the proper party to do it.

The judgment is affirmed.